## JOHN SPRAGUE *versus* TIMOTHY BAILEY.

A collector of taxes, acting under a warrant from the assessors, is not responsible to the party of whom he levies a tax, for the regularity of the town meeting, or the validity of the votes at the meeting, at which the tax is granted.

After the election of a town treasurer at a town meeting held under a warrant to choose town officers, a second meeting was called by a warrant " to fill any vacancies in town offices that may exist." At this meeting it was voted, that the treasurer be appointed collector of taxes. It was *held*, that no collector having been chosen at the first meeting, there was a vacancy in the office, and that it might be filled, either by electing a separate officer, or by appointing *the treasurer collector*.

A town clerk entered in his book of records, that the defendant was elected and sworn as treasurer ; afterwards, on leave *to amend his record*, he struck out the word *treasurer* and inserted the words *collector of taxes according to my best knowledge and belief*, and he testified to the grounds of his belief. It was *held*, that the alteration was not a record, but that it was competent to go to the jury, together with the parol evidence, on the question whether the defendant had been sworn as collector.

Where the assessors of a town chose no chairman, it was *held*, that one of them, who kept their books and papers and did all their writing, might be considered the principal assessor, within the meaning of *St.* 1823, *c.* 138, § 3, which provides that a copy of the lists of assessment, and of the valuation, shall be deposited in the assessors' office, where there is one, otherwise shall be lodged with the chairman or principal assessor, for general examination.

The provision in *St.* 1815, *c.* 130, that a copy of the 2d section, respecting an abatement to those who pay their taxes promptly, shall be posted up in public places, is merely directory to the assessors, and the plaintiff in an action of trespass against a collector for taking his goods in levying his tax, cannot avail himself of a failure in this respect, as an objection to the validity of the assessment.

So of the omission by the assessors to follow precisely the form of valuation prescribed by *St.* 1823, *c.* 138.

A warrant to a collector of taxes, signed by only a majority of *the assessors, is valid*

TRESPASS *de bonis asportatis.* The defence set up was, that the defendant was the collector of taxes and treasurer of the town of Malden, and that the plaintiff was duly assessed in that town, in 1834, and the goods were duly taken by a constable in levying the tax.

It was objected that there were fatal defects and irregularities in the proceedings under which the defendant justified.

In the warrant for calling the annual town meeting in Malden, to be held on the 3d of March, 1834, was an article, to choose town officers for the ensuing year. The meeting was held on that day, and Uriah Chamberlain was chosen moderator. Being absent, a moderator *pro tempore* was chosen, who took his seat

and resided. After some progress had been made in the business of the meeting, Chamberlain came in, and declined to accept the office of moderator, and the meeting voted to excuse him, and the moderator *pro tempore* presided through the meeting, without a new election or other action of the meeting thereon. A part of the taxes of the year were voted after Chamberlain had come into the meeting and had declined to act as moderator. The meeting was dissolved.

Another meeting was called on the 24th of the same March, and one of the articles in the warrant was, " to fill any vacancies in town offices, that may exist." At this meeting it was " Voted, that the town treasurer be collector of taxes."

Upon the subject of administering the oath of office to the defendant, the facts were, that when the records of the town were produced at the trial, they contained this entry : " The following persons have appeared before me and taken the oath of office, to which they had been chosen or appointed, viz. Uriah Chamberlain, William Pierce, &c., Selectmen. Timothy Bailey, Treasurer," &c. (naming a large number of persons elected to various offices.) " April 1834. Attest, G. Haven, Town Clerk." The defendant moved that the town clerk, being the same person who made the record originally, should be permitted to amend his record. This was objected to by the plaintiff, but allowed ; and the town clerk amended, by striking out the word "treasurer," after the name of Bailey, and inserting the words " collector of taxes, according to the best of my knowledge and belief." He testified that he did not recollect the fact of administering the oath that year in particular ; that he had been town clerk for four or five years, at that time ; that the defendant had been elected to the office of collector for several years before that time, and had always been qualified before the witness ; that he remembered administering, at some time or times, to the defendant, the collector's oath, according to the form in the book called " The Town Officer," and he never administered to him any other oath as a town officer, and finding it certified that he administered an oath to the defendant in that year, he had no doubt it was that oath, and upon this ground he amended the record.

Upon the subject of the office and place for books, papers

37 *

and business of the assessors, the evidence was, that Ebenezer
Nichols was the first assessor chosen, and that he used to sign
his name first and above the names of the other two assessors,
in all cases where the assessors signed papers ; that Daniel A.
Perkins was the last chosen, and used to sign last ; that the
board was never organized by choosing a chairman ; and that
Perkins did all the writing of the assessors, in all their books,
during the year. The tax was made at the hall hired by the
town in Green's house, where the assessors met occasionally.
Perkins kept the book of 1834 at his house, occasionally tak-
ing it with him to the meeting at the hall. Some of the books
were occasionally kept in a chest, under lock and key, in a
garret at Green's. Persons wishing to see the list and valua-
tion used to call at the house of Perkins, for that purpose.
The plaintiff called there several times and the books were
shown to him by Perkins ; they were also shown to him by
Perkins at Green's. The tax of 1834 was made in July.
There was nobody at Green's to show the books, except when
the assessors met there, or when one of them went there by
request. At Perkins's house the only way to see the books
was by application to him or his family. Perkins believed he
had the permission of the assessors, after the taxes were as-
sessed, to shift the books to his house. But the board met
whenever requested, at Green's, and they met there monthly
(and this was known) for the purpose of hearing applications
for abatements. To those meetings Perkins carried the
books.

In regard to posting up in public places the second section
of *St.* 1815, *c.* 130, respecting an abatement to be made to
those persons who should pay their taxes within the periods
therein limited, it appeared that the town had voted to allow
abatements in pursuance of the statute, and that an abstract of
the 2d section and of the vote of the town was posted up.

The form of the assessment and valuation of the plaintiff's
property, as made in the assessors' books, was as follows :

| | |
|---|---:|
| 5 houses, 1 store, 1 barn, . . . . | $ 3,800·00 |
| 1 shed, 1 chaise house, . . . . . | 150·00 |
| 1 horse and chaise, . . . . | 150·00 |
| Money at interest and stock, . . . | 300·00 |

When the list of assessments was signed and committed to the defendant, Upham, one of the assessors, did not sign it. He was not present when the other assessors signed the warrant to the defendant, but was at the meetings when the taxes were made.

The jury found a verdict for the defendant, subject to the exceptions arising upon the foregoing facts.

*Choate* and *Crowninshield,* for the plaintiff. A portion of the taxes was voted at an illegal town meeting. When Chamberlain declined being moderator and was excused, the powers of the moderator *pro tempore* were at an end, and it was the duty of the town to choose another moderator. The fact of there being a moderator *pro tempore*, implies the existence of another moderator. *St.* 1785, *c.* 75, § 6. And the plaintiff may avail himself of this objection in this action against the collector of taxes. *Blossom* v. *Cannon*, 14 Mass. R. 177.

Under the warrant " to fill vacancies," no original election could be made. *St.* 1785, *c.* 75, § 2, 4 ; Revised Stat. *c.* 15, § 42. Constables are collectors *ex officio*, if no collectors are chosen, and there was no vacancy in the office of collector at the time of the second meeting. *St.* 1785, *c.* 70, § 1. At any rate the warrant ought to have contained an article, " to determine whether the treasurer shall be the collector." *St.* 1815, *c.* 130, § 1.

It has not been legally proved that the defendant was sworn as collector. The alteration made by the town clerk in his book of records, stating his *belief*, is not a record. Nor can the administration of the oath be proved by parol ; so that the testimony of the town clerk was inadmissible. *Taylor* v. *Henry*, 2 Pick. 402, 403.

As the assessors had no office, a copy of the list of assessments, and of the valuation, should have been lodged with the chairman of the assessors. *St.* 1823, *c.* 138, § 3 ; *Thayer* v. *Stearns*, 1 Pick. 482.

The posting up an abridgment of *St.* 1815, *c.* 130, § 2, was not a compliance with the requisition of the 4th section of that statute.

The form of the valuation was insufficient. Each description of property ought to be valued separately. *St.* 1823,

Sprague
*v.*
Bailey.

*c.* 138, § 4 ; *Blossom* v. *Cannon*, 14 Mass. R. 177 ; *Martin* v. *Mansfield*, 3 Mass. R. 429 ; *Hayden* v. *Foster*, 13 Pick. 492.

The warrant to the defendant is signed by only two of the three assessors, and is therefore void. *St.* 1815, *c.* 130, § 4 ; 1785, *c.* 50, § 6.

*H. H. Fuller* and *Washburn*, for the defendant, said that for any irregularity in the meeting at which the tax was voted, or in the warrant for the meeting at which the defendant was appointed collector, or for the neglect of the assessors to keep their papers at the proper place, or to post up the 2d section of *St.* 1815, *c.* 130, or to make the valuation in due form, the defendant was not answerable. *Colman* v. *Anderson*, 10 Mass. R. 118 ; *Sanford* v. *Nichols*, 13 Mass. R. 286 ; *Waldron* v. *Lee*, 5 Pick. 328. As to the competency and sufficiency of the evidence to prove that the collector was sworn, they cited *Briggs* v. *Murdock*, 13 Pick. 307 ; *Bassett* v. *Marshall*, 9 Mass. R. 312 ; *Blossom* v. *Cannon*, 14 Mass. R. 177.

*Oct.* 21*st.*

SHAW C. J. delivered the opinion of the Court. Cases of this description are well calculated to bring to a severe test the regularity of public bodies and public officers. A man, it is true, ought not to be distrained for his taxes, unless the steps of the law have been pursued ; at the same time, it is contrary alike to justice and public policy, that officers who intend to act correctly, should be subjected to damages and costs, upon mere technical objections ; and therefore such exceptions only are to be listened to, as are strictly warranted by law. The plaintiff's objections to his liability for this tax are all strictly technical.

The first is, that the meeting at which the tax was voted, was not duly organized by the choice of a moderator. The Court are of opinion, that this exception cannot prevail. The action is trespass against the collector ; it charges him as a wrongdoer, in taking the plaintiff's property without lawful warrant. The collector, we think, is not responsible for the regularity of the meeting or the validity of the votes at the meeting, at which such tax was granted.

The next objection is, that the warrant was not sufficient to

authorize the town to choose a collector. The warrant was "to fill vacancies." No collector having been chosen, there was a vacancy, which might be filled either by electing a separate officer, or by voting to appoint the treasurer to be collector, under the authority of *St.* 1815, *c.* 130, § 1, which was done.

The next objection is, that it does not appear that the plaintiff was sworn as collector. Upon this point the Court are of opinion, that there was competent evidence to go to the jury, to find whether the plaintiff was sworn as collector or not, and whether this was done for that year. The entry in the book is a memorandum, not a record, and may be left to the jury with other evidence upon the fact. But as the verdict was taken *pro formâ,* and this question was not passed upon, we think the case must go to the jury again, to determine this fact.

The next objection is, that the books were not lodged in the assessors' office. This objection is founded on the authority of *Thayer* v. *Stearns,* 1 Pick. 482, putting a construction upon *St.* 1785, *c.* 50. Since that case, the law in this respect has been altered by *St.* 1823, *c.* 138, § 3. This provides, that the assessment lists, together with a copy of the invoice and valuation, &c. shall be deposited in the assessors' office, where any is kept, otherwise shall be lodged with the chairman or principal assessor, there to remain for examination. In the present case, there was no assessors' office, and the assessors did not appoint either of their number chairman, and therefore we think Mr. Perkins, who did all the writing, might be deemed the principal assessor for this purpose, within the meaning of the statute. It is found that the book of 1834, by which we understand the assessment lists, together with the invoices and valuation, was deposited with him, and that any person could have access to them by applying to him. We think the assessment cannot be avoided on this ground.

The next exception is, that the assessors did not post up a copy of the 2d section of *St.* 1815, *c.* 130, conformably to the direction of the 4th section of the same statute, but only an abstract thereof. The Court are of opinion, that this was merely directory to the assessors, and that a failure in this respect does not constitute an objection to the validity of the

assessment, which is open to the plaintiff. The same answer applies to the objection to the form of valuation.

The last objection relied on is, that the warrant was signed by two only of the three assessors. We take the rule to be, that where a power is to be executed or ministerial act done by three or more individuals, and no authority is given to the majority, all must execute, to give validity to the act. But where an authority is vested in a public organized body, for public purposes, the act of the majority is the act of the body.

The Court are of opinion that the plaintiff's motion to set aside the verdict and order a new trial, ought to be so far granted, as to open the single fact, whether the collector was duly sworn as such collector, for the year 1834. This may conveniently be done, the parties consenting to it, by directing the jury, if they find that he was duly sworn, to find a verdict for the defendant ; otherwise, to find a verdict for the plaintiff, and assess his damages.